**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| PARKS PHARMACY, INC., *et al.*, | |
| Plaintiffs, | CASE NO. 2:17-CV-00503-TFM |
| vs. | JUDGE _____(TBD) |
| CARDINAL HEALTH 110, LLC, CARDINAL HEALTH 112, LLC, LEADER DRUG STORES, INC., | MAGISTRATE JUDGE MOORER |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

## I.   INTRODUCTION

In this action, Plaintiffs Parks Pharmacy, Inc. and Demetrius Yvonne Parks, d.b.a. Parks Pharmacy #4, ("Plaintiffs") bring breach of contract, tortious interference with contractual relations, and tortious interference with business relations claims against Defendants Cardinal Health 110, LLC, Cardinal Health 112, LLC, and Leader Drug Stores, Inc. ("Cardinal Health"). (Compl. ¶¶ 19–29.)  But what the Complaint unsuccessfully attempts to hide from the Court is that Plaintiffs were found to be in violation of numerous Alabama Board of Pharmacy regulations in an October 6, 2016 order, which rendered Plaintiffs in breach of their agreements with Cardinal Health.

The Court should dismiss Plaintiffs' three claims against Cardinal Health for several reasons. Regarding the breach of contract claim, Plaintiffs fail to: (i) identify the contracts and relevant provisions that Cardinal Health allegedly breached; and (ii) plead their own performance.  Indeed, the allegations of the Complaint demonstrate they

cannot plead their own performance under the applicable agreements because Plaintiffs breached the agreements by violating various state and federal pharmacy laws.  With respect to the tortious interference claims, Plaintiffs cannot state a claim for relief because Cardinal Health is not a stranger to the contracts and business relationships at issue, and the claims are barred to the extent Plaintiffs' alleged basis for their claims is Cardinal Health's refusal to perform under contracts.

## II.   FACTUAL BACKGROUND

Cardinal Health is an integrated healthcare services and products company that connects patients, providers, payers, pharmacists, and manufacturers for care coordination and patient management. (Compl. ¶¶ 1, 3; Notice of Removal ¶ 11.)  As a pharmaceutical wholesaler, Cardinal Health negotiates with suppliers of pharmaceutical products to provide such products to pharmacies.  Moreover, the centerpiece of Cardinal Health's comprehensive managed care offering is LeaderNET, a Pharmacy Services Administrative Organization that manages network contracting and plan administration for community pharmacies. Through LeaderNET, Cardinal Health negotiates prescription reimbursement rates with managed care networks and facilitates reimbursements by those networks to pharmacies for covered pharmaceuticals and supplies purchased by network plan members on behalf of the pharmacies.

Demetrius Parks ("Parks") is a pharmacist in Montgomery County who owns Parks Pharmacy, Inc., which operates several pharmacies, such as Parks Pharmacy #1, #2, #3, and #4 ("Parks Pharmacy"). (Compl. ¶ 2.) Plaintiffs only plead claims on behalf of Parks Pharmacy #4. (Compl. at p. 1.) The parties' business relationship began in early 2014 and is governed by two sets of contracts: a Prime Vendor Agreement ("PVA") (a

redacted[1] copy of which is attached as Exhibit 1) and corresponding Member Certification Agreement ("MCA") (a redacted copy of which is attached as Exhibit 2), and Leader Managed Care Program Participation Agreement[2] ("LeaderNET Agreement") (a true and accurate copy of which is attached as Exhibit 3). (Compl. ¶ 4.) The pertinent terms of these contracts are set forth below.

### A.     Prime Vendor Agreement and Member Certification Agreement

Under a Prime Vendor Agreement effective June 1, 2016, the American Associated Pharmacies group purchasing organization (the "AAP GPO") designated Cardinal Health 110, LLC, and Cardinal Health 112, LLC as the exclusive primary wholesale pharmaceutical suppliers to members of its group buying network. (Ex. 1, Art. 1(a).)  Under the PVA, the member pharmacies purchase pharmaceutical products through Cardinal Health, who administers contracts between pharmacies and drug manufacturers. (*Id.*, Art. 9(b), 10.)   Each pharmacy member executes a Member Certification Agreement agreeing to be bound by the terms of the PVA with the AAP GPO.  Parks Pharmacy, Inc. executed its MCA on May 17, 2016. (Ex. 2.)

Under the PVA, the GPO, each Member (including Parks Pharmacy), and Cardinal Health promised to "comply with all federal and state laws, rules and regulations applicable to the storage, distribution, purchase, sale, and use of pharmaceutical products." (Ex. 1, Art. 17(b).) In addition,

---

[1] Portions of the PVA and Member Certification Agreement that contain confidential, sensitive commercial, and trade secret information are redacted from the publicly-filed coies of Exhibits 1 and 2. The redacted provisions are not relevant to the parties' dispute. And Plaintiffs should have unredacted versions of these agreements in their possession. Nonetheless, Cardinal Health will provide unredacted versions of Exhibits 1 and 2 to the Court and Plaintiffs, on request.

[2] While Plaintiffs have only pled claims on behalf of Parks Pharmacy #4, they cited the LeaderNET agreement for Parks Pharmacy #3. (Pl. Ex. C, p. 3.) Beause the LeaderNET agreements are identical in all relevant parts, the analysis here would apply equally to Parks Pharmacy #3.

> [a]s set forth in the Compliance Representations and Warranties for Customers, each Member hereby acknowledges and agrees that, notwithstanding any other provision in this Agreement, or any provision in any other agreement between Cardinal Health and the Member, Cardinal Health may, in its sole discretion, immediately suspend, terminate, or limit the distribution of controlled substances, listed chemicals, and other products monitored by Cardinal Health to the Member at any time if Cardinal Health believes that the continued distribution of such products to the Member may pose an unreasonable risk of the diversion of such products based on the totality of the circumstances and such other considerations as may be deemed relevant by Cardinal Health.

(*Id.*, Art. 17(d).)[3] Further, in the "Compliance Representations and Warranties," Plaintiffs agreed not to file any claims against Cardinal Health for suspending, limiting, or terminating the distribution of controlled substances or other products. (*Id.*, p. 46.)

Under the MCA, Plaintiffs warranted to Cardinal Health that they would:

> be at all times during the term in compliance with, all applicable licensing requirements of all applicable federal, state and local governmental authorities, including without limitation any licensing requirements to purchase, receive, possess, store, use, dispense, and/or distribute or otherwise dispose of pharmaceutical products . . .

(Ex. 2, Art. 5.) They further agreed that "Cardinal Health may terminate this Certification Agreement and Member's participation under the Prime Vendor Agreement immediately in the event it reasonably determines that the Member is in breach of this paragraph." (*Id.*) These agreements are governed by Ohio Law. (Ex. 1, Art. 26; Ex. 2, Art. 6.)

### B. LeaderNET Agreement

Under the Cardinal Health LeaderNET Agreement executed by Plaintiffs on December 14, 2015, LeaderNET agreed to solicit and use its best efforts to contract with various employers, unions, insurance companies and other groups providing

---

[3] Additionally, "no Schedule II orders will be delivered other than in compliance with DEA regulations." (Ex. 1, Art. 5(b).)

pharmaceutical benefits to participate in the Leader Managed Care Program on behalf of its members. (Ex. 3, Art. 1.)  In other words, pharmacies, like Plaintiffs, agree to become part of Cardinal Health's Leader Managed Care Program, and obtain the benefit of being included in-network with various insurance providers.

The LeaderNET Agreement likewise required Plaintiffs to comply with all state and federal laws.  In particular, it states that Plaintiffs:

> must comply with all applicable state and federal laws and regulations affecting either the practice of the profession of pharmacy or the operation of a pharmacy, including but not limited to having a licensed pharmacist available during the hours of business for patient consultation and, at all times, holding a valid permit to operate a pharmacy in the jurisdiction where the Participant does business.

(*Id.*, Art. 11.a.) Further, it states that Cardinal Health:

> reserves the right to terminate or to reject any pharmacy for cause from participating in the Leader® Managed Care Program. Such termination or rejection shall not be limited to failure to comply with these Terms and Conditions of Participation, but shall also include a failure to comply with the terms and conditions of the Participant's program membership agreement with Leader® or the terms of any other agreement with Cardinal Health or any of it subsidiaries, and any other action of the Participant which affects adversely the reputation of Leader Drug Stores, Inc., or its ability to contract with any Groups.

(*Id.*, Art. 14.) This agreement is also governed by Ohio law. (*Id.*, Art. 29.)

## C.   The Alabama Board of Pharmacy Suspends Parks' License and Places Parks Pharmacy's Permits on Probation

In October 2016, the Alabama Board of Pharmacy ("Board") issued an order ("BOP Order") (a true and accurate copy of which is attached as Exhibit 4) suspending Demetrius Parks' license to practice pharmacy and placing on probation Parks Pharmacy #2's and #4's state controlled substance permits for five years based on 46 counts alleging improper practices. (Compl. ¶ 8; Ex. 4, pp. 19–20.) The Board also imposed an administrative fine of $27,000. (Compl. ¶ 8; Ex. 4, p. 20.) A portion of the

factual basis for the final order included: (1) the location of Parks Pharmacy #1 was condemned and relocated prior to issuance of a permit for the new location; (2) pharmaceuticals were improperly stored in a warehouse; (3) an employee of Parks Pharmacy delivered pharmaceuticals by car; (4) Parks Pharmacy #2 was replaced by #4, and #2 purchased controlled substances after it was closed with an invalid registration number; (5) there were discrepancies in record-keeping and mislabeled prescriptions, resulting in an "action plan" with the Drug Enforcement Administration; (6) Parks Pharmacy #3 was operating without a licensed pharmacist on certain dates and had prescriptions stored in hot locations and outside the pharmacy area; and (7) the owner owed Medicaid of Alabama $351,191.03 as part of a recoupment and moved the pharmacy location to avoid repayment. (Ex. 4, pp. 2–7.)

On December 1, 2016, the Circuit Court of Montgomery County stayed the suspension, and then supplemented its prior order. (Compl. ¶ 9; Pl. Exs. A, B.) On June 9, 2017, the Alabama Court of Civil Appeals granted the Board's petition for a writ of mandamus, directed the circuit court to vacate the supplemental order and, thus, reinstated the prohibition on Parks' ability to practice as a pharmacist pending judicial review of the suspension/probation following a hearing on remand. *Ex parte Alabama Bd. of Pharmacy*, Case No. 2160266 (Ala. Ct. Civ. App. Dec. 1, 2016) (Order attached as Exhibit 5).

### D.   <u>Cardinal Health Exercises its Termination Rights</u>

As a result of the BOP Order, Cardinal Health first terminated its supply agreements (the PVA and MCA) with Plaintiffs effective November 1, 2016. (Compl. ¶ 11; Notice of Removal ¶ 22.) Subsequently, it terminated Plaintiffs' participation in the managed care program through the LeaderNET Agreement on April 14, 2017. (Compl. at

Ex. C, p. 2.) On May 5, 2017, Plaintiffs attempted to invoke the grievance procedure in Article 24 of the LeaderNet Agreement. (Compl. ¶ 13, Pl. Ex. C, p. 1.) On May 16, 2017, Cardinal Health reminded Plaintiffs that Article 24 does not apply to termination of the agreement by Cardinal Health. (Compl. at Ex. C, p. 2.) Plaintiffs then filed a civil action against Cardinal Health in the Circuit Court of Montgomery County on June 21, 2017, which Defendants removed to this Court on June 26, 2017.

### III.   APPLICABLE LAW

### A.   Standard of Review

A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim for relief. *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n. 8 (11th Cir. 2002). Both test the sufficiency of the complaint against Rule 8 of the Federal Rules of Civil Procedure. *New v. CitiFinancial Auto Credit, Inc.*, Civil Action No. 1:10-CV-905-WKW[WO], 2011 WL3503128, *2 n.2 (M.D. Ala. Aug. 10, 2011). The Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion for judgment on the pleadings, the Court may properly consider contracts referenced in the complaint and central to a plaintiff's claims. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court may consider only the

complaint itself and any documents referred to in the complaint which are central to the claims."); *Horsley v. Feldt,* 304 F.3d 1125, 1135 (11th Cir. 2002) (discussing how 12(c) requires that the attached document be central to the plaintiff's claim and undisputed); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (motion to dismiss not converted to motion for summary judgment because attached contract was central to plaintiff's complaint). Here, Plaintiffs reference "certain agreements" between the parties that Defendant allegedly breached and makes those contracts central to their claims. (Compl. ¶ 6.) Cardinal Health merely provides copies of those agreements for the Court's consideration. Moreover, the Court is required to consider the attached LeaderNET Agreement because Plaintiffs attached a portion of it to the Complaint. *See Craig Mcalpine, Vpma1, Inc. v. Dr.ing.hc.f.porsche A.G.*, No. 211CV618FTM99DNF, 2013 WL 12167926, *2 n.4 (M.D. Fla. Mar. 27, 2013).

Further, the Court may take judicial notice of matters of public record, such as administrative and judicial rulings. Attaching such documents to a motion for judgment on the pleadings does not convert it to a motion for summary judgment. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999) (judicial notice of matters of public record); *Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (judicial notice of pleadings and orders in a prior case).

### B.   Choice of Law

Under the circumstances of this case, Ohio law applies to the breach of contract claim, and Alabama law applies to the tortious interference claims.

In Alabama, the choice-of-law provision in the contract governs unless "the selected state's law is contrary to Alabama's public policy." *DJR Assocs., LLC v. Hammonds*, ___ F. Supp. 3d ___, 2017 WL 958148, *8 (N.D. Ala. Mar. 13, 2017); *see also*

*Cherry, Bekaert & Holland v. Brown*, 582 So.2d 502, 507 (Ala. 1991). Here, all three contracts state that Ohio law governs, and as evidenced below, Ohio breach-of-contract principles do not conflict with a fundamental public policy of Alabama, especially with respect to pleading the existence of a contract and the plaintiff's performance. (Ex. 1, Art. 26; Ex. 2, Art. 6; Ex. 3, Art. 29.) In any event, the elements for breach of contract in Alabama are the same as in Ohio. *JITCO Grp. Ltd. v. 789 Auto Sales, LLC,* No. 1:15-CV-2235-VEH, 2016 WL 1660232, *2 (N.D. Ala. Apr. 27, 2016) (citing *Employees' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 975 (Ala. 1998)).

For tort claims, the court applies the law of the state where the injury occurred. *Huntsville Golf Dev., Inc. v. Estate of Brindley*, No. 5:13-CV-00870-MHH, 2015 WL 5693608, *6 (N.D. Ala. Sept. 29, 2015) (applying Tennessee law to the breach of contract and unjust enrichment claims and Alabama law to the tortious interference claim). Both Parks and Parks Pharmacy reside in Alabama and conduct their business there. (Compl. ¶¶ 1–2.) Consequently, Plaintiffs' alleged injuries occurred in Alabama, and Alabama's law applies to the tortious interference claims.

## IV.   ANALYSIS

### A.   Plaintiffs Fail to Satisfy the First and Second Elements of a Breach of Contract Claim

In Ohio, the elements for a breach of contract claim are: "(1) a contract existed, (2) one party fulfilled his obligations, (3) the other party failed to fulfill his obligations, and (4) damages resulted from that failure." *Quest Workforce Sols., LLC v. Job1USA, Inc.*, 75 N.E.3d 1020, 1030 (Ohio Ct. App. 2016). Plaintiffs fail to attach the contracts at issue or identify the provisions Defendant allegedly breached. Further, they do not (and

cannot) plead their own performance. Consequently, the Court should grant judgment to Cardinal Health with respect to their breach of contract claim.

> **1.    The Court Must Dismiss the Breach of Contract Claim Because Plaintiffs Fail to Attach the Contracts and/or Cite the Relevant Provisions**

Plaintiffs do not attach complete versions of any of the three contracts at issue to the Complaint, nor do they identify any provisions breached by Cardinal Health. For this reason alone, their breach of contract claim must be dismissed.

*Twombly* and *Iqbal* require a plaintiff to identify the contracts at issue and the provisions allegedly breached. *GE Elec. Co. v. S & S Sales Co.*, No. 1:11CV00837, 2011 WL 4369045, *2 (N.D. Ohio Sept. 19, 2011); *see also Lee v. Potter*, No. 3:08CV00344, 2009 WL 2057625, *7 (S.D. Ohio July 14, 2009) ("[T]his Court construes *Ashcroft* and *Twombly* to require that Plaintiff identify the specific contract language whereby the Union purportedly assumed a legally-enforceable obligation to Plaintiff."). For instance, in *Jackson v. Cleveland Clinic Foundation*, the court granted the defendants' motion to dismiss because the complaint failed to allege "facts or a specific contract provision that required the delivery of essential medical services" or that indicated that closing the hospital would constitute a breach. No. 1:11 CV 1334, 2011 WL 4007732, *6 (N.D. Ohio Sept. 9, 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Likewise, in *Bihn v. Fifth Third Mortgage Co.*, the court dismissed the breach of contract claim because the plaintiff failed to cite the specific agreement. 980 F. Supp. 2d 892, 907 (S.D. Ohio 2013).[4]

---

[4] Courts in the Eleventh Circuit applying Alabama contract law also require the plaintiff to identify the contract and provisions allegedly breached. *See, e.g.*, *NPA Assocs., LLC v. Lakeside Portfolio Mgmt., LLC,* No. 12–23930–CIV, 2014 WL714812, *4 (S.D. Fla. Feb. 22, 2014) ("The Complaint must allege which provision of the contract has been breached.").

Here, Plaintiffs allege only that Cardinal Health breached "certain agreements" related to the provision of medications and the handling of managed care contracts. (Compl. ¶ 26.) Plaintiffs do not identify which agreement or agreements they allege provide the basis for their claims. They do not attach complete copies[5] of these contracts to the Complaint. Nor do they cite specific provisions that Cardinal Health allegedly breached. Plaintiffs' pleading deficiencies force Cardinal Health to speculate about the nature of Plaintiffs' claims and the basis of their defense. That is not what *Twomlby* and *Iqbal* allow.

Because Plaintiffs fail to plead the first element of a breach of contract claim under Ohio law, the Court should dismiss that claim (Count Three). *See GE Elec. Co.*, 2011 WL 4369045, at *2 (granting motion to dismiss were plaintiff failed to identify provision defendant breached); *Lee*, 2009 WL 2057625, at *7 (dismissing for failure to identify contract language supporting plaintiff's alleged right); *Jackson*, 2011 WL 4007732, at *6 (concluding plaintiff failed to plead a plausible claim where it did not point to a specific contract provision defendant breached); *Bihn*, 980 F. Supp. 2d at 907.

### 2. The Court Must Dismiss the Breach of Contract Claim Because Plaintiffs Cannot Plead Their Own Performance

In addition, Plaintiffs do not assert that they fulfilled their performance obligations under the contracts at issue, nor can they. On this basis alone, the Court should grant judgment to Cardinal Health on the breach of contract claim.

In Ohio, a plaintiff must plead her own performance as part of the breach of contract claim. *AK Steel Corp. v. Earley*, 809 F. Supp. 2d 1326, 1335 (S.D. Ala. 2011)

---

[5] While Plaintiffs attach the grievance procedures of the LeaderNET Agreement, they do not allege that Defendant breached those procedures. (Pl. Ex. C, p. 3). In any event, those procedures describe disputes between a pharmacy and an insurance company, not disputes between a pharmacy and LeaderNET. (Answer at Ex. 3, Art. 24.)

(applying Ohio law); *Bihn*, 980 F. Supp. 2d at 907. For example, a court dismissed a breach of contract claim where the plaintiff alleged that he made payments required by the contract up until September 2008 but failed to allege that he made payments between September and the filing of the complaint in December 2008. *Wells Fargo Bank, N.A. v. Favino*, No. 1:10 CV 571, 2011 WL 1256771, *9 (N.D. Ohio Mar. 31, 2011).

Moreover, if a plaintiff admits a failure to perform under the contract, then she cannot satisfy the second element. *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 915 (S.D. Ohio 2013) (holding that plaintiffs failed to plead performance where they admitted that they stopped making mortgage payments); *see also Berg v. Access Grp., Inc.*, No. CIV.A. 13-5980, 2014 WL 4812331, *5 (E.D. Pa. Sept. 26, 2014) ("Specifically, a number of Ohio courts have refused to allow plaintiffs who stopped making their monthly mortgage payments to bring breach of contract claims against the mortgage lender, finding that the plaintiffs failed to plead that they performed under the contract."). For example, in *CosmetiCredit, LLC v. World Financial Network National Bank*, the parties' program agreement required that the provider agreements comply with its provisions, but since the plaintiff "freely admitted" that its provider agreements were inadequate, it failed to perform under the program agreement—and the defendant's corresponding obligations were not triggered. 24 N.E.3d 762, 773 (Ohio Ct. App. 2014).[6]

---

[6] Courts in the Eleventh Circuit applying Alabama law likewise grant motions for judgment on the pleadings on breach of contract claims where the plaintiff admits his own nonperformance under the contract. *See, e.g.*, *New v. CitiFinancial Auto Credit Inc.*, No. 1:10–CV–905–WKW [WO], 2011 WL 3503128, *2 (M.D. Ala. Aug. 10, 2011). Further, looking at other jurisdictions, in *Krueger Investments, LLC v. Cardinal Health 110, Inc.*, the court declined to issue a preliminary injunction to force the defendants to perform under the parties' distribution contract in part due to the section of the agreement allowing the defendants to terminate it if the plaintiffs failed to comply with all laws, rules, regulations, ordinances, and DEA guidance. No.

Plaintiffs make absolutely no attempt to plead their own performance. The reason for their omission is obvious. The BOP Order demonstrates that Plaintiffs were <u>not</u> in compliance with their contractual obligations. The various agreements Plaintiffs entered into with Cardinal Health required the following:

> **Prime Vendor Agreement** – requires Plaintiff to comply with all federal and state laws relating to storage, distribution, purchase, sale and use of pharmaceuticals and permits Cardinal Health, in its sole discretion, to terminate distribution of controlled substances for suspected diversion.

> **Member Certification Agreement –** requires Plaintiff to comply with all federal and state licensing requirements and permits Cardinal Health to terminate the pharmacy's membership if it believes the pharmacy is non-compliant.

> **LeaderNET Agreement –** requires Plaintiff to comply with all applicable state and federal regulations affecting pharmacies and allows termination for breach of the Terms and Conditions, breach of any other agreement with Cardinal Health, or any action which adversely affects LeaderNET's reputation.

(Ex. 1, Art. 17(b), (d); Ex. 2, Art. 5, 6; Ex. 3, Art. 11.a, 14).

In fact, Plaintiffs *admit* that they failed to perform under the contracts by virtue of the suspension of Parks' license, the placement of the permits on probation, and the penalties imposed by the Board. This case is akin to *CosmetiCredit:* because Plaintiffs admit they were not complying with the terms of the pertinent agreements, they cannot state a breach of contract claim against Cardinal Health. Plaintiffs' failure to perform means Cardinal Health's obligations are not triggered. *See* 24 N.E.3d at 773. Thus, Plaintiffs' failure to plead the second element of a breach of contract claim under Ohio law is a separate and independent reason that the Court should dismiss that claim (Count Three).

---

CV 12-618-PHX-JAT, 2012 WL 3028349, *4 (D. Ariz. July 24, 2012). The provisions in the contracts at issue here closely resemble the provisions in that case.

**B.**   **Plaintiffs Fail to Satisfy the Third and Fourth Elements of the Tortious Interference Claims**

Plaintiffs generally allege that Cardinal Health tortiously interfered with unspecified business relationships and contracts with individual customers and with its managed care contracts (Compl. at ¶¶ 20, 23.) These allegations are insufficient under federal pleading standards with respect to Alabama's elements for the claims. "Under Alabama law, a plaintiff claiming tortious interference with business relations must show: '(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage.'" *N. Jackson Pharmacy, Inc. v. McKesson Corp.*, No. 5:14-CV-02371-SGC, 2015 WL 5011346, *4 (N.D. Ala. Aug. 24, 2015) (quoting *White Sands Group, LLC v. PRS II, LLC*, 32 So.3d 5, 14 (Ala. 2009)). For a claim of tortious interference with a contract, the first element requires the existence of a contract, rather than a business relationship. *Hope for Families & Cmty. Serv., Inc. v. Warren*, 721 F.Supp.2d 1079, 1178 (M.D. Ala. 2010). Here, Cardinal Health is not a stranger to the contracts and business relationships at issue. Thus, Plaintiffs cannot satisfy the third element of these claims. Further, the sole basis for Plaintiffs' tortious interference claims is Cardinal Health's termination of the contracts, but Alabama courts hold that a refusal to perform under a contract does not constitute a tort. Thus, Plaintiffs cannot satisfy the fourth element of these claims either. Consequently, the Court should grant judgment on the pleadings to Cardinal Health on the tortious interference claims.

1.   **The Court Must Dismiss the Tortious Interference Claims Because Plaintiffs Fail to Plead that Defendant is a Stranger to the Relevant Contracts and Business Relationships**

For the third element, a plaintiff must establish a defendant is a "stranger" to the contract or business relationship at issue. *N. Jackson Pharmacy, Inc.*, 2015 WL 5011346, at *4. The Alabama Supreme Court has enumerated the following instances where a party is not a stranger: "(1) the defendant is an essential entity to the purported injured relations; (2) the allegedly injured relations are inextricably a part of or dependent upon the defendant's contractual or business relations; (3) the defendant would benefit economically from the alleged injured relations; or (4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contract relations." *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So.2d 1143, 1156 (Ala. 2003) (broker was participant in life insurer's insurance contracts with policyholders). It is appropriate to grant a motion for judgment on the pleadings where the allegations and attached contracts establish that the defendant is not a stranger. *See, e.g.*, *Cochran v. Five Points Temporaries, LLC*, 907 F. Supp. 2d 1260, 1273 (N.D. Ala. 2012) (granting motion for judgment on the pleadings for defendants because they were not strangers to the business relationship).

In *Tom's Foods, Inc. v. Carn*, for instance, the court concluded that a snack food manufacturer was not a stranger to contractual relations between a vending machine company and a prospective purchaser of the machines because the manufacturer had assigned its rights under promissory notes and security agreements from the company and acted as assignee's agent for repossession of collateral. 896 So.2d 443, 455 (Ala. 2004). In other words, the manufacturer was not a stranger because it was "involved in

creating" the relationship. *Id.*; *see also Nimbus Techs., Inc. v. SunnData Prod., Inc.*, No. CV-04-CO-00312 W, 2005 WL 6133373, *10 (N.D. Ala. Dec. 7, 2005) ("The Alabama Supreme Court has held that control over the business relationship in question is enough to show that a party is not a stranger to the agreement.").

Likewise, an engineer who helped form a contract between a project owner and a general contractor was not a stranger to their business relationship. *Glenn Constr. Co., LLC v. Bell Aerospace Servs., Inc.*, 785 F. Supp. 2d 1258, 1282 (M.D. Ala. 2011); *see also BellSouth Mobility, Inc. v. Cellulink, Inc.*, 814 So. 2d 203, 214 (Ala. 2001) ("Similarly, the Agency Agreement between Cellulink and BellSouth necessarily made BellSouth a party to every air-time subscription solicited by Cellulink at Wal–Mart."). Further, in *From-Waste, LLC v. Gold Coast Commodities, Inc.*, where a defendant contracted with an entity to remove sludge and that entity subcontracted the work to another entity, the court held that the defendant did not intentionally interfere with the subcontractor's business relationships with potential fuel purchasers. No. 2:15-CV-01431-JEO, 2017 WL 75754, *4 (N.D. Ala. Jan. 9, 2017). The court dismissed the tortious interference claim because, absent the original service agreement between the defendant and the first entity, there would be no subcontract, and absent the subcontract, there would be no business relationship between the subcontractor and fuel purchaser. *Id.* at *5.

Here, Cardinal Health is not a stranger to the contracts or relationships between Plaintiffs and their customers, suppliers, or insurance groups. First, Cardinal Health is "an essential entity to the purported injured relations." For example, the LeaderNET Agreement clearly provides for Cardinal Health to solicit and negotiate contracts with various employers, unions, and health insurers to participate in the Leader Managed Care Program for the benefit of the member pharmacies. (Ex. 3, Art. 1.)   Absent

participation in Cardinal Health's LeaderNET program, Plaintiffs would not be considered in-network with various third-party payors to get reimbursed for customers filling scripts at their pharmacy. Further, Plaintiffs purchase pharmaceutical products under the PVA with the AAP GOP through execution of the MCA. Absent the purchase of such pharmaceutical products through those agreements, customers would not be able to come to Plaintiffs' pharmacy to have prescriptions filled. (Ex. 1, Art. 1.) In other words, Cardinal Health has control over the supply and managed care contracts in question, meaning it is not a stranger to the agreements.

Second, the injured relations are inextricably a part of or dependent upon Cardinal Health's contractual or business relations with Plaintiffs. *See Waddell*, 875 So.2d at 1156. Comparable to *From-Waste, LLC*, absent the MCA and LeaderNET Agreements entered into with Cardinal Health, Plaintiffs would not have business relationships with the suppliers and insurance companies Cardinal Health allegedly interfered with. 2017 WL 75754, at *1 (general contract and subcontract connected property owner to subcontractor's relationships with potential oil purchasers). Third, Cardinal Health and Plaintiffs are parties to a comprehensive interwoven set of contractual relations, as evidenced by the various contracts at issue. (Ex. 1, Art. 9(b); Ex. 2, Art. 1.)

Because: (1) Cardinal Health is an essential entity to the relations between Plaintiffs and their customers, suppliers, and insurance groups, (2) the relationships are inextricably intertwined with Cardinal Health's and Plaintiffs' contracts, and (3) the parties are part of a comprehensive interwoven set of contractual relations, the Court should grant Cardinal Health judgment on the pleadings with respect to Plaintiffs' tortious interference claims (Counts One and Two).

> 2. **The Court Must Dismiss the Tortious Interference Claims Because a Refusal to Carry Out a Promise is Not Intentional Interference**

For the fourth element, "a breach of contract does not give rise to an action for the tort of intentional interference with business or contractual relations." *Lolley v. Howell*, 504 So. 2d 253, 255 (Ala. 1987). In other words, "a refusal or failure to carry out a promise" does not constitute "an affirmative or threatened act of interference." *Alabama Power Co. v. Thompson*, 178 So. 2d 525, 528 (Ala. 1965) (reversing directed verdict for plaintiff where defendant failed to provide space for plaintiff to perform subcontracting work for general contractor); *see also Axelroth v. Health Partners of Alabama, Inc.*, 720 So. 2d 880, 886 (Ala. 1998) (health maintenance organization not liable for telling patients it did not cover podiatric services under its contracts with city and county). A court should grant a motion for judgment on the pleadings or a motion to dismiss where the plaintiff fails to allege the tort claim independent of a breach of contract. *See, e.g.*, *Sabir v. ADT Sec. Servs.*, No. 2:07cv1055-MEF, 2008 WL 1924984, *4 (M.D. Ala. Apr. 30, 2008); *Roberson Excavation, Inc. v. Dale Cnty. Water Auth.*, No. 1:15-CV-939-MHT, 2016 WL 5799051, *6 (M.D. Ala. Sept. 9, 2016), *report and recommendation adopted*, No. 1:15CV939-MHT, 2016 WL 5843214 (M.D. Ala. Oct. 3, 2016) (granting motion to dismiss because "a party to a contract cannot, as a matter of law, be liable for tortious interference with the contract").

"The tort of intentional interference with business relations was intended to provide a remedy for situations where a third party intentionally interferes with the relationship of two contracting parties, not as a remedy for situations where an allegedly breached contract between two parties . . . affects the relationship of one of the parties with a third party." *Cahaba Seafood, Inc. v. Cent. Bank of the S.*, 567 So. 2d 1304, 1306

(Ala. 1990) (corporation could not recover for bank's alleged breach of line of credit agreement, which negatively affected corporation's relationship with hotel). In *Griffiths v. Blue Cross & Blue Shield of Alabama*, the Northern District of Alabama explained that a "health care provider cannot prevail on a claim alleging that a health insurer tortiously interfered with the contractual relationships between the provider and his patient covered by the insurer." 147 F. Supp. 2d 1203, 1222 (N.D. Ala. 2001). More specifically, where Blue Cross restricted the availability for chiropractic care, the court explained that "a wholesale refusal to deal does not constitute tortious interference with a business or contractual relation under Alabama law." *Id.*

Likewise, in *Alabama Psychiatric Services, P.C. v. A Center for Eating Disorders*, the Supreme Court of Alabama held that the defendant's refusal to include the plaintiff in its approved-provider network for expanded psychiatric services policy coverage was not tortious interference. 148 So. 3d 708, 714 (Ala. 2014); *see also Branch Banking & Tr. Co. v. Houma Dollar Partners, LLC*, No. CIV.A. 10-00267-CB-M, 2012 WL 384484, *14 (S.D. Ala. Feb. 6, 2012) ("If breach of contract does not give rise to a claim for intentional interference with business relationships, *a fortiori*, the lawful exercise of a contractual right does not.").

Plaintiffs allege that Cardinal Health tortiously interfered with its business and contractual relationships with customers, suppliers, and insurers by terminating its contracts with Plaintiffs.  But a "failure to carry out a promise" does not satisfy the fourth element of these claims.  As in *Griffiths*, even a "wholesale refusal to deal" does not provide a claim for tortious interference. 147 F. Supp. 2d at 1222 (health insurer did not tortiously interfere with relationships between provider and patients).

Moreover, because Cardinal Health indisputably had a right to terminate the contracts, the lawful exercise of its contractual rights necessarily eviscerates the tortious interference claims. *See Breach Banking & Tr. Co.*, 2012 WL 384484, at *14. Consequently, the Court should grant judgment on the pleadings to Cardinal Health on the tortious interference claims.

## V.   CONCLUSION

For the foregoing reasons, Cardinal Health respectfully requests that the Court grant its motion for judgment on the pleadings, and dismiss Plaintiffs' Complaint with prejudice.

Dated:   October 2, 2017                    Respectfully submitted,

*/s/ Trischa Snyder Chapman*
Wesley C. Redmond (ASB-366-D30W)
Ford Harrison, LLP
420 20th Street, Suite 2560
Birmingham, AL 35203
Telephone: 205.244.5905
wredmond@fordharrison.com

Robert J. Tucker (*pro hac vice*)
rtucker@bakerlaw.com
Trischa Snyder Chapman (*pro hac vice*)
tchapman@bakerlaw.com
Baker & Hostetler LLP
200 Civic Center Drive
Suite 1200
Columbus, OH 43215-4138
Telephone: 614.228.1541
Facsimile: 614.462.2616

*Counsel for Defendants Cardinal Health 110, LLC, Cardinal Health 112, LLC, and Leader Drug Stores, Inc.*

20

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed electronically on October 2, 2017.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.


 /s/ Trischa Snyder Chapman_____
*Counsel for Defendants Cardinal Health 110, LLC, Cardinal Health 112, LLC, and Leader Drug Stores, Inc.*