Contract No. 60308

# LEADER® MANAGED CARE PROGRAM
# PARTICIPATION AGREEMENT

Instructions to Applicant

Participation Application and Agreement

Terms and Conditions of Participation

1

**Form Revised February 2013**

Exhibit 3





The business listed below agrees to become a Participating Pharmacy in the Leader® Managed Care Program, in accordance with the provisions of this Application and Agreement and the Terms and Conditions of Participation, which are attached to and incorporated into this Application and Agreement by this reference. The person executing this Application and Agreement on behalf of the pharmacy business listed below is authorized to execute this document, and has reviewed and, by execution of this Participation Application and Agreement, accepts the Terms and Conditions of Participation in the Leader® Managed Care Program. This Application and Agreement may be executed by the exchange of faxed executed copies, certified electronic signatures or executed copies delivered by electronic mail in Adobe Portable Document Format or similar format, and any signature transmitted by such means for the purpose of executing this Application and Agreement shall be deemed an original signature for purposes of this Application and Agreement. In addition, this Application and Agreement may be executed in counterparts, each of which shall be deemed an original as against any party whose signature appears thereon, but both of which together shall constitute one and the same instrument.

Name of Pharmacy: <u>PARKS PHARMACY #4</u>

Name of Pharmacist: <u>DEE PARKS</u>

Street Address: <u>1323-A MULBERRY ST,</u>

City State and Zip Code:  <u>MONTGOMERY    AL    36106,</u>          County:  MONTGOMERY

Telephone Number (include are code) of Store:  <u>3342641416</u>

NCPDP Number: <u>0136792</u>

NPI Number:  <u>1649580531</u>

U.S. Drug Enforcement Agency (DEA) Number:  FP4331283

Federal Employer Identification Number (FEIN):  <u>260378863</u>

State Pharmacy License Number:  <u>114277</u>

**ACCEPTANCE BY PHARMACY**

Signature:  ~~_Dee Parks_~~                                  Date:  Dec 14, 2015

Name/Title:  DEE PARKS                                        Owner


**ACCEPTANCE BY LEADER DRUG STORES, INC.**

_____          Date: _____
Vice President – Managed Care

2

**Form Revised February 2013**

Exhibit 3

Contract No. 60308

## TERMS AND CONDITIONS OF PARTICIPATION
## IN THE LEADER® MANAGED CARE PROGRAM

1. **The LEADER® Managed Care Program**. *Leader Drug Stores, Inc*. ("Leader") shall solicit and use its best efforts to contract, on behalf of each participant ("Participant"), with various employers, unions, insurance companies and other groups providing pharmaceutical benefits ("Groups") to participate in the *Leader*® Managed Care Program. Each Participant shall provide the services required by each Group contract in accordance with the other terms and conditions that follow and in accordance with written communications issued by LEADER or the Groups via email, written communications, manuals, website postings or such other means determined by LEADER or the Groups, in their respective sole discretion, and updated from time to time (such communications shall be referred to herein as the "Participant Instructions").

2. **Fees.**
   Upon the execution of the Participation Agreement, the Participant shall pay to *Leader*® any applicable enrollment and initiation fees. Thereafter, Participant shall pay the applicable monthly fee for participation in the *Leader*® Managed Care Program and, if applicable, any fees associated with ancillary programs and services in which Participant may enroll from time to time (*e.g.*, Reconciliation Solution). In addition, Leader® may from time to time charge the Participants additional fees as compensation for obtaining and maintaining access to the Groups. Leader® will invoice the Participants for the amount of any such additional fees.

3. **Patient Profiles.**
   Each Participant may be required to keep a patient profile on each Group's member or beneficiary. The type of patient profile is to be determined by the Participant. Upon request, each Participant may be required to provide a Group's member or beneficiary with a copy of appropriate portions of his patient profile.

4. **Consumer Drug Information.**
   Each Participant may be required to provide each beneficiary, as appropriate, with information about each prescribed drug in a form comprehensible to the beneficiary. The type of consumer drug information will be left to the Participant.

5. **Patient and Prescriber Counseling.**
   Each Participant may be required to provide, where appropriate, pharmacist counseling services both to Group's member or beneficiaries and to prescribers.

6. **Other Services.**
   Each Participant may be required to provide other services within the pharmacy's service area to any Group's beneficiary or member as required by the particular contract with that Group. For example, each Participant may be required to provide prescription drug program beneficiaries with 24- hour-a-day, seven-days-a-week emergency services (e.g., dispensing of prescription drugs after normal business hours). Unless specified in the *Participant Instructions*, the manner in which those services are provided is to be determined by the Participant.

7. **Programs.**
   Each Participant may be required to participate in peer review and/or other quality assurance programs and may be required to take appropriate action in response to situations identified through the quality assurance programs.

8. **Co-Pay Collection.**
   Each Participant is required to collect from the Group's member or beneficiary the complete amount of any co-payment which the Group contract payor requires pursuant to the contracts entered into by LEADER.

9. **Claims Submission and Processing.**
   Each Participant must submit claims using the forms or electronic claim format as may be required by LEADER and/or the Group or Group's processor.

10. **Contracts.**
   a. Each Participant must participate in each and every Group contract accepted by LEADER, in accordance with the following procedures. The actual effective date of commencement or termination of each Group contract will be specified by LEADER.

   b. The procedures for accepting a Group contract shall be as follows:

      1. The criteria for the acceptance of Group contracts initially has been established by the *Leader*® Managed Care Advisory Board and representatives of LEADER. Any Group contract which, in the reasonable judgment of LEADER satisfies the established criteria will be included as part of the Program and appropriate explanations of the contract's terms and conditions will be provided to Participants in the Participant Instructions and updates thereto.

Exhibit 3

2.   If a proposed Group contract does not satisfy the established criteria, it will be submitted to a Contract Review Panel for advice and counsel. The Contract Review Panel will review all such contracts and decide whether they should be accepted as part of the Program. The Contract Review Panel shall be composed of designated independent pharmacists who are members of *Leader®* and are Participants in good standing under their program membership agreements with *Leader®* and their Participation Agreement. Each participating member of the Contract Review Panel shall serve for a term of two (2) years from the date of his or her appointment and may be re-appointed for one (1) two (2) year consecutive additional term. Contract Review Panel members may serve for additional terms as set forth above following a break in service.

c.   LEADER cannot and does not warrant or represent that a Participant will have any particular level of profit from participation in any or all of the Group contracts.

d.   The following additional terms shall apply to any contract relating to workers compensation:

1.   Participant hereby authorizes LEADER to be its attorney in fact for the purpose of entering into contracts on behalf of Participant, wherein Participant agrees to sell and assign Participant's rights, accounts and other rights and claims to payment for certain workers compensation prescription claims submitted by Participant (the "Claims") to a vendor designated by LEADER (the "Vendor"). The sale and assignment of such rights and claims shall apply to Claims that Participant elects to submit to the Vendor, and Participant is not obligated to submit any number of Claims, if any, to any Vendor.

2.   Participant hereby authorizes the Vendor to submit such Claims for payment on its behalf to insurance carriers, self insurance plans and other account debtors and to act, to the extent necessary, as its authorized agent and attorney in fact and to undertake claims verification and processing services on its behalf and recover reasonable compensation for such services from insurance carriers, self insurance plans and other account debtors other than the Participant. The Vendor may act as an authorized agent or attorney in fact on behalf of the Participant only to the extent necessary to process the Claims, and accept, discharge, compromise, discount or modify the obligations of insurance carriers, self insurance plans, and other account

debtors to make payments for the Claims, and Vendor is not authorized to otherwise take any actions on behalf of the Participant or to otherwise bind or alter the legal relationships of the Participant with any other person.

3.   Participant warrants to LEADER and Vendor that with regard to each Claim submitted and assigned to Vendor that: (i) such Claim is for bona fide prescription medications and services provided by Participant to a customer in accordance with the information set forth on the Claim; (ii) the assigned rights associated therewith are owned by and owing to Participant without dispute or any right of offset or counterclaim, and free of any liens, security interests, encumbrances or claims of third persons; (iii) the sale and assignment of the assigned rights associated therewith to Vendor does not and will not contravene any agreements to which Participant is a party with any other persons; (iv) the prescription was filled in accordance with all applicable federal and state laws and regulations; and (v) the Participant has paid or shall assume sole and exclusive responsibility for the payment of any sales taxes imposed upon medications and services provided by the Participant. Each of the foregoing warranties will survive termination or expiration of the term of this Participation Agreement, and remain in full force and effect.

e.   If at any time during Participant's participation in the Program, the total amount payable to Participant by relevant Groups through LEADER'S central payment offering is less than the aggregate amount identified by those same Groups as owed to them by Participant as the result of an audit recoupment or other reconciliation process, then, Participant shall immediately pay to LEADER or affiliate designated by LEADER, the amount of this "Negative Account Balance". LEADER may, in its sole discretion, agree to finance the Negative Account Balance through an alternative arrangement.

**11. Laws.**
a.   Each Participant must comply with all applicable state and federal laws and regulations affecting either the practice of the profession of pharmacy or the operation of a pharmacy, including but not limited to having a licensed pharmacist available during the hours of business for patient consultation and, at all times, holding a valid permit to operate a pharmacy in the jurisdiction where the Participant does business.

Exhibit 3

b.  Each Participant warrants to LEADER and each Group that it understands and complies with the requirements of the laws, regulations and guidelines created in connection with Medicare Part D, and will attest to this, as well as complete other requests for information upon request by LEADER.

**12. Liability.**

a.  Nothing contained herein shall be construed to require the Participant to render any pharmaceutical service or dispense any prescription medication if, in the pharmacist's professional judgment, such service should not be rendered or such medication should not be dispensed. Participant must assume complete legal responsibility for liability arising out of all acts taken by its agents pursuant to contracts accepted by LEADER hereunder and agree to indemnify and to hold harmless LEADER from any liability or costs, including attorney's fees, for any such acts. Each Participant will maintain adequate professional and other appropriate liability insurance in an amount not less than $1,000,000 per occurrence and $3,000,000 in the aggregate.

Failure to maintain such insurance coverage or to provide satisfactory proof of such insurance coverage may result in Participant's inability to participate in any one or all Group contracts. Such proof of insurance shall be provided to LEADER upon request in the form designated by LEADER, and a copy will be kept on file and may, upon request of any Group, be photocopied and a copy provided to such Group as proof of Participant's insurance coverage. LEADER reserves the right to increase or decrease in the future the minimum limits of liability insurance coverage required to be maintained in order to meet the requirements of any individual Group contract when it is necessary to do so, to conform to the then current standard within the industry. Each Participant shall look solely to each Group's payor for all compensation for services rendered to insurance claim beneficiaries of contracts presented by LEADER. LEADER will provide appropriate assistance to each Participant in obtaining such compensation. LEADER assumes complete legal responsibility for liability arising solely out of its acts and agrees to hold harmless Participants from such acts.

b.  If any group contract accepted by LEADER should, in any jurisdiction, violate or in its implementation cause a Participant to violate any federal, state or local law, the Participants in that jurisdiction shall not be required to participate in that particular Group contract.

**13. Notification.**

Each Participant must notify LEADER immediately should it cease to meet any aspect of these *Terms and Conditions of Participation.*

**14. Termination or Rejection.**
LEADER reserves the right to terminate or to reject any pharmacy for cause from participating in the *Leader®* Managed Care Program. Such termination or rejection shall not be limited to failure to comply with these *Terms and Conditions of Participation*, but shall also include a failure to comply with the terms and conditions of the Participant's program membership agreement with *Leader®* or the terms of any other agreement with Cardinal Health or any of it subsidiaries, and any other action of the Participant which affects adversely the reputation of Leader Drug Stores, Inc., or its ability to contract with any Groups. Any challenge to such termination or rejection shall follow the grievance procedures specified in the *Participant Instructions*. A terminated Participant shall take all appropriate action to ensure that it is no longer identified as a *Leader®* Participant and shall return all *Leader®* materials in possession of such Participant to LEADER immediately upon termination. Immediately upon termination, Participant must pay LEADER, in immediately available funds an amount equal to any Negative Account Balances in effect at the time of termination.

**15. New Terms/Program Termination.**
LEADER reserves the right to change in writing the *Terms and Conditions of Participation* at any time. Participants will be provided an opportunity, in writing for response within a specified time frame, either to accept the new *Terms and Conditions of Participation* or to withdraw from the *Leader®* Managed Care Program participation. If Participant does not respond within the specified time frame, Participant will be deemed to have accepted the new *Terms and Conditions of Participation*. LEADER reserves the right to terminate the entire Program at any time upon 90 days prior written notice to Participants.

**16. Term.**
The initial term of a Participant's participation in the Program shall be two (2) years from the date of acceptance into the Program by LEADER (the "Initial Term"). Thereafter, the term of participation shall renew automatically for additional one (1) year periods unless notice of termination is given by the Participant to *Leader®* at least 120 days prior to the end of the term then in effect, in which case participation shall terminate at the end of that term. Notwithstanding the foregoing, after the expiration of a Participant's Initial Term, that Participant will have the right to withdraw its participation from the Program for any reason whatsoever by giving

Exhibit 3

*Leader*® written notice of such withdrawal, which shall be effective 120 days following receipt by Leader® of the written notice. Notwithstanding the foregoing, no termination notice shall be effective from any Participant until that Participant has paid all amounts due to Leader® under these Terms and Conditions of Participation. Participant shall pay LEADER, in immediately available funds, for all amounts accrued and/or payable through the effective date of the withdrawal. For the avoidance of doubt, Negative Account Balances are included in amounts payable to LEADER.

17. **Status of Parties**.
Each Participant participates in the *Leader*® Managed Care Program as an independent contractor to provide prescription drugs and other professional pharmacy services to the prescription drug beneficiaries pursuant to contracts presented by LEADER.

18. **Expenses**.
   a. LEADER shall be authorized to pass through to Participants in each Group contract the costs for claims processing, disbursement of monies to Participants received from a Group's payor and other expenses incurred in the implementation of each Group contract on such basis as is appropriate for that contract. When necessary, LEADER is authorized to advance and be reimbursed for such costs. Other expenses can include, but are not limited to, the cost incurred for identification cards, benefit booklets and other printed materials required by the Group sponsor or administrator or necessary to implement the contract. Any such costs and expenses shall be disclosed to the Contract Review Panel and included in the explanatory information provided for each Group contact in the Participant Instructions.

   b. A Participant may incur costs to participate in the Programs for items such as on-line claim adjudication, data processing equipment, computer software licenses, telephone lines and other items.

19. **Pharmacy Services**.
Each Participant agrees to provide each Group's members or beneficiaries with prescription drugs and other appropriate items pursuant to the legal prescription of a licensed prescriber presented by the member or beneficiary.

20. **Records.**
Each Participant shall provide authorized representatives of LEADER with an opportunity to examine and audit the Participant's records pertinent to contracts presented by LEADER.

21. **Notices.**
All notices sent by the Participant and LEADER or representatives of either party, pursuant to the Participation Agreement, shall be sent by United States Postal Service, first class mail, postage prepaid, and addressed using the addresses provided on the Participant Application or to any updated address provided by Participant.

22. **Assignment.**
The Participation Agreement may not be assigned by Participant. LEADER may assign or delegate from time to time the Participation Agreement or any or all of its rights or obligations under these Terms and Conditions, the Participation Agreement or the Program to any third party (including, but not limited to, any other subsidiary or affiliate of Cardinal Health, Inc., an Ohio corporation); provided, that such third party agrees to comply with these Terms and Conditions, the Participation Agreement, and the Program.

23. **Marketing.**
Each Participant agrees to provide LEADER with its consent to use its name in any marketing or advertising materials developed and disseminated by LEADER that may contribute to the success of the program.

24. **Grievance Procedures.**
   a. Participant shall look solely to each Group, Group member or other third party, as appropriate under the law and the applicable contract, for all compensation for prescriptions and other goods supplied and services rendered. Participant recognizes and agrees that LEADER is not responsible for and does not in any way warrant or guarantee payment to Participant under any Group contract. LEADER has established the following grievance procedures to assist in the resolution of disputes between the Participant and the Groups and their members. Disputes between a Participant, on the one hand, and Groups, Group members or other third parties, on the other, first shall be referred to LEADER before the Participant exercises formal legal remedies against the Groups or their members. LEADER will assist the Participant to resolve the dispute on behalf of the Participant. Representatives of LEADER will review the facts of the dispute with the Participant and the Group. LEADER will have no authority to settle or otherwise resolve any dispute on behalf of a Participant without the Participant's prior approval. If the matter cannot be resolved informally, the Participant will be entitled to exercise any right or remedy available under the contract or applicable law. LEADER will not be responsible for any legal fees, costs, expenses, liabilities or damages resulting from the dispute between the Participant and the Group, Group

Exhibit 3

member or other third party. The Participant does not waive any rights available under the Group Contract or under applicable law by following these procedures. In addition to providing assistance pursuant to the foregoing grievance procedures, LEADER may provide other assistance to Participant, including assistance in obtaining compensation for prescriptions, goods and services.

b.  Participant agrees to accept and comply with the terms and conditions of any arbitration clause in a Group contract.

25. **Agreement Administration - Participant Instructions.**
LEADER may develop and set forth in *Participant Instructions* or other document acceptable procedures necessary of the proper administration of the *Participant Application and Agreement* and any and all Group contracts accepted by LEADER and each Participant shall implement these procedures.

26. **Entire Agreement.**
The *Participation Agreement* and the Participant's cooperative advertising program membership agreement constitute the entire agreement between the Participant and LEADER; there are no other agreements or understandings with respect to this subject matter. The *Participation Agreement* may be modified or amended only in writing and only if signed by authorized representatives of the Participant and LEADER.

27. **Non-Exclusive.**
If any Participant is offered the opportunity to participate in a plan or other group benefits contract that is not part of the Program, such Participant shall promptly notify LEADER. LEADER shall review the plan and has the option to include it as part of the Program if it satisfies the established criteria or is otherwise approved by the Contract Review Panel. If LEADER elects not to include the plan as part of the Program, the Participant may then become a participant in the plan on its own. Nothing shall be construed in the *Participation Agreements* prohibit either the Participant or LEADER from contracting with other parties to provide pharmacy services.

28. **Mark and Logo.**
By virtue of the Participant being a part of the *Leader*® Managed Care Program, the Participant is licensed to use the service mark "Leader®" in connection with advertising services as a Participant. LEADER retains full ownership rights in the mark. The Participant agrees to use the trademark only in a manner prescribed by LEADER. All such use of the mark shall inure to the benefit of LEADER. The Participant shall immediately discontinue the use of the name,

symbol or service marks of LEADER upon termination, for any reason, of the Participation Agreement.

29. **Ohio Law and Jurisdiction.**
This *Participation Agreement*, the relationship between each Participant and LEADER and any dispute between our respective affiliates, officers, directors, shareholders and employees shall be governed by the interpreted in accordance with the internal laws of the state of Ohio.

30. **Participation Agreement.**
To become a Participant, a duly authorized representative must execute and deliver a *Participation Application and Agreement* to LEADER. A copy of these *Terms and Conditions of Participation* should be retained. The *Participation Application and Agreement* shall not become effective unless and until signed and executed by a duly authorized representative of LEADER. Pharmacies in good standing under their program membership agreements may become Participants, and only those pharmacies that remain in good standing under their program membership agreements and this Agreement shall remain Participants. The pharmacy copy of the *Participation Application and Agreement*, upon signing by LEADER, shall be returned to and retained by the Participant.

31. **Medicaid/Medicare.**
If and to the extent any discounted prices, credits, or rebates are earned and paid by LEADER with respect to any of the transactions described herein, then applicable provisions of the Medicare/Medicaid and state health care fraud and abuse/anti-kickback laws (collectively, "fraud and abuse laws") may require disclosure of the applicable price reduction on Participant's claim or cost reports for reimbursement from governmental or other third parties. Participants shall comply with all applicable provisions of the fraud and abuse laws and agree to indemnify and hold LEADER harmless for any failure on their part to do so.

32. **Other Participants.**
Other Non-Leader® pharmacies may be invited to become participants for a particular Group Contract if necessary under the terms established by the Group sponsor or administrator to effectively serve the Group's members and beneficiaries. Such Non- Leader® pharmacies will execute a separate agreement limited to participation in such Group Contract.

Exhibit 3

**Signature:**

**Email:**  nicholas.baulch@cardinalhealth.com

Exhibit 3